SQUIRE, APPELLANT, *v.* THE WHEELING & LAKE ERIE RY. CO., APPELLEE.

(No. 4411—Decided January 16, 1950.)

*Mr. Gerald P. Openlander* and *Mr. Walter N. Murray,* for appellant.

*Mr. Frank M. Hackett,* for appellee.

CONN, J.  This action was begun in the Common Pleas Court to recover damages for alleged personal injuries received by plaintiff while in the employ of the defendant in interstate commerce as a switchman and yard conductor. It is alleged that the injuries were proximately caused by the failure of defendant to exercise ordinary care to furnish plaintiff with instrumentalities which were reasonably safe and a reasonably safe place to work.

It is admitted in the pleadings or the evidence tends to show that, on October 9, 1945, in the nighttime, plaintiff was engaged in his work as a switchman and while moving along the running board on top of a boxcar his foot caught on a screw projecting above the surface of the running board, causing him to trip and fall or be thrown off the car; that he landed on his feet, breaking a bone in his left foot; that plaintiff was hospitalized and under the care of a physician employed by the defendant; that on or about December 27, 1945, on the suggestion of the claim agent of defendant, plaintiff went to the office of the attending physician, walking the entire distance of two miles or more; that he was examined and told by the physician that his injuries were healed and that he had no permanent injury and was able to go to work; and that he thereupon walked to the claim agent's office, a distance of a half mile or more, settled his claim in consideration of $750, and at that time executed a release in full settlement, releasing and discharging defendant from any and all liability by reason of the injuries he had sustained.

Plaintiff testified that he went to work the next day and tried to do his work but on account of swelling

and pain in his left ankle he. was forced to quit; that thereafter he received further medical treatment from the attending physician and other doctors for a period of three or four months; and that thereafter he worked as regularly as he could, accepting easier ''runs'' with some loss of earnings.

Plaintiff also introduced medical testimony tending to show that at the time of the trial (March 1949) plaintiff had loss of motion in his left foot and had difficulty in walking, particularly over rough and uneven surfaces; that this difficulty would continue, and this condition was permanent; that it would take from three to six months for a fracture such as plaintiff sustained in his left foot to heal; and that the present condition of plaintiff's foot will remain and his disability be permanent.

Plaintiff in his amended reply tendered to defendant the money paid to him, with interest to date of acceptance, and the record shows that a tender was made by plaintiff in open court and refused by defendant.

At the close of plaintiff's evidence, defendant moved for a directed verdict and also moved the court to find, as a matter of law, that the release executed by plaintiff was valid and a bar to this action. This motion was granted and, by direction, a verdict for defendant was returned by the jury.

The judgment entry does not recite the ground upon which the directed verdict rests, but the trial court stated to the jury that plaintiff had not sustained by proper evidence that ''the release was induced by misrepresentation, mistake or fraud.'' Motion for new trial was overruled and judgment for defendant was entered on the verdict, from which plaintiff appeals on questions of law.

Plaintiff's assignments of error, briefly stated, are:

1. Error in directing a verdict for defendant.

2. Error in refusing to admit certain testimony offered by plaintiff.

■ This action was brought under favor of the Federal Employers' Liability Act, as amended, Title 45, Section 51 *et seq.*, U. S. Code. No question is raised in this case as to the applicability of the act.

Under the act, the state courts are given concurrent jurisdiction with the federal courts but "where the statute appears to govern any question as to substantive law, practice or procedure, the state law is superseded and the federal act alone controls." *Brown* v. *Western Ry. of Alabama,* 338 U. S., 294, 94 L. Ed., 100, 70 S. Ct., 105; *New York, Chicago & St. Louis Rd. Co.* v. *Biermacher,* 110 Ohio St., 173, 143 N. E., 570; *Beven* v. *New York, Chicago & St. Louis Rd. Co.,* 132 Ohio St., 245, 6 N. E. (2d), 982, certiorari denied, 301 U. S., 695, 81 L. Ed., 1351, 57 S. Ct., 924; 35 American Jurisprudence, 874, Section 457.

The motion of defendant in general terms for a directed verdict was followed by a motion for directed verdict on the specific ground that the release was a bar to the action, as has been already indicated. No claim is made that there is a complete absence of credible evidence and from which the jury may not infer that the defendant failed to exercise ordinary care in providing plaintiff with instrumentalities which were reasonably safe and a reasonably safe place to work.

We have then for consideration the legal consequences of the settlement and release, that is to say, whether under the evidence a jury question was presented in the trial court.

The form of the release leaves no room to question its general and comprehensive character. In express terms it releases defendant "from any and all liability, damages, claims, demands and suits whatsoever" resulting from the injuries received by plaintiff.

It is the contention of plaintiff that the claim agent of defendant and the attending physician employed by it falsely represented to him that he had fully recovered and was able to resume his work as a switchman; and that believing these representations were true, a settlement was made and release executed under a mutual mistake of fact.

As already pointed out, plaintiff testified that on the day before the release was executed the claim agent told him he had been advised by the attending physician that his injury was healed and that he would be all right to go to work. Thereupon, plaintiff walked a great distance to the office of the physician and following an examination the physician made a similar representation to him and also told him that there was no permanent injury. Upon receiving the advice of the physician, plaintiff walked to the office of the claim agent where settlement was made.

This evidence and the evidence introduced in relation to the events that followed in point of time the execution of the release, that is to say, evidence tending to establish plaintiff's inability to perform his accustomed labor, a series of medical treatments by the attending physician and others over a period of months, pain, suffering, and the permanence of plaintiff's injury, raise an inference that the settlement was made and release executed under a mistake of fact.

The contention of defendant that the release relied on in this case is a bar unless plaintiff offers clear and convincing evidence that its execution was induced by false and fraudulent representations of the attending physician is not conclusive.

We do not have before us at this time the weight of the evidence or the issue of false representations made in bad faith by the agents of the defendant. The issue of fact raised by the answer and amended reply

is that the condition of plaintiff's left foot was falsely represented to him and that he relied on this erroneous and incorrect representation as a statement of fact and accepted it as being true when he executed the release. It is not material whether the statements made by the physician and repeated by the claim agent are regarded as constructively fraudulent or a mistake of fact, as the evidence in the instant case tends to show that plaintiff acted in good faith in relying on the superior knowledge of the physician.

Similar issues within the Federal Employers' Liability Act have been before the courts in a number of instances and it uniformly appears that where there is substantial evidence that a settlement was made and a release executed in good faith under a mutual mistake of fact a jury question is presented. *Callen* v. *Pennsylvania Rd. Co.*, 332 U. S., 625, 92 L. Ed., 242, 68 S. Ct., 296; *Thompson* v. *Camp* (C. C. A. 6, 1947), 163 F. (2d), 396; *Southern Ry. Co.* v. *Clark* (C. C. A. 6, 1916), 233 F., 900; 45 American Jurisprudence, 685, Section 20.

In the case of *Callen* v. *Pennsylvania Rd. Co.*, *supra*, plaintiff made a settlement and executed a release of his claim under the mistaken belief that his injuries were not permanent, and the court held that it was error for the trial court to withdraw from the jury the question of the validity of the release. We quote the first paragraph of the syllabus as follows:

"Where plaintiff in a suit under the Federal Employers' Liability Act contended that a release relied upon by defendant was invalid because neither party knew at the time it was given that plaintiff's injury was permanent, and the permanence of the injury was disputed by defendant, defendant was entitled to have the issue as to the permanence of the injury passed upon by the jury; and it was error for the trial court

to withdraw from the jury the question of the validity of the release."

Defendant claims also that the judgment should be affirmed as no tender was made by plaintiff of the consideration received for the release until the case was called for trial and for this reason defendant was entitled to judgment on the pleadings. It is conceded that plaintiff made no tender prior to the commencement of his action. It was not until defendant filed its answer that plaintiff was advised that defendant would rely on the release as a bar to his claim. Thereupon, he made formal tender in his reply of the amount he received, together with interest, and thereafter in open court renewed the tender.

In the instant case, the issue of actual fraud in obtaining the release was not raised on the pleadings or the evidence. Under these circumstances the release is voidable and not void. The rule is generally recognized that a party who wishes to rescind a release that is voidable only must repay or at least tender the consideration received. *Picklesimer* v. *Baltimore & Ohio Rd. Co.*, 151 Ohio St., 1, 84 N. E. (2d), 214; *Perry* v. *M. O'Neil & Co.*, 78 Ohio St., 200, 85 N. E., 41; 35 Ohio Jurisprudence, 288, Section 50. See, also, *Flynn* v. *Sharon Steel Corp.*, 142 Ohio St., 145, 50 N. E., (2d), 319.

As the validity of the release in this case is governed by federal law and the liberal provisions of the Federal Employers' Liability Act, it is our opinion that the tender made is sufficient to put in issue the validity of the release, even if under the state law a tender were considered to be a condition precedent to the commencement of the action.

We do not find any case directly in point, and none has been cited. The following cases illustrate the liberal rule of the federal courts on the question of

the validity of a release. *Lumley* v. *Wabash Rd. Co.* (C. C. A. 6, 1896), 76 F., 66; *Southern Ry. Co.* v. *Clark, supra*; *Chicago, Missouri & St. Paul Rd. Co.* v. *Busby* (1930), 41 F. (2d), 617; *Irish* v. *Central Vermont Ry., Inc.* (1947), 164 F. (2d), 837.

We come to the conclusion that a jury question was presented on the issue of the validity of the release executed by plaintiff and that the trial court erred in directing a verdict for defendant.

■ Plaintiff offered medical testimony tending to show that at the time the release was signed it was not possible to predict the outcome of plaintiff's injuries, how long he would be incapacitated, or whether he would ever be able to perform his normal duties as a switchman. This evidence appears to be relevant and material on the issue of misrepresentation and mistake, and in our opinion it was prejudicial error to exclude it.

The judgment is reversed and the cause is remanded for a new trial.

*Judgment reversed.*

CARPENTER and FESS, JJ., concur.